UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUAN ARTURO CUSTODIO IXCOY,<br><br>    Petitioner,<br><br>v.<br><br>RUBEN LEYVA, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Acting Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, acting U.S. Attorney General; MIKE HOLLINSHEAD, Sheriff of Elmore County,<br><br>    Respondents. | Case No. 1:26-cv-00298-AKB<br><br>**ORDER GRANTING PETITION FOR HABEAS CORPUS** |

Pending before the Court is Petitioner Juan Arturo Custodio Ixcoy's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1) and Motion for Temporary Restraining Order (TRO) (Dkt. 2). For the reasons explained below, the Court grants the Petition in part and denies the TRO as moot.

## I.    BACKGROUND

Petitioner, a native of Guatemala, has lived in the United States since his entry without inspection in 2016 at the age of 16 (Dkt. 1 ¶¶ 1, 25). Petitioner was detained by ICE on May 11, 2026 (Dkt. 4 at 4). He is currently detained at the Elmore County Jail in Mountain Home, Idaho (Dkt. 1 at. ¶ 17).

**ORDER GRANTING PETITION – 1**

Petitioner contends his detention is unlawful because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have determined he is subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A) (Dkt. 1 ¶¶ 38-48). Specifically, he argues that § 1225(b)(2) "does not apply to individuals like [him] who previously entered and are now residing in the United States (*id.* ¶ 53).

On May 15, 2026, the Court ordered the Government to respond to Petitioner's petition (Dkt. 4). Briefing is now complete, and the issue is ripe for a decision.

## II.   ANALYSIS

As with many other immigration-related habeas corpus petitions filed in this District, this case concerns the detention provisions at §§ 1226(a) and 1225(b)(2). The Court has repeatedly explained its disagreement with DHS's interpretation of § 1225. *See Guadarrama Ayala v. Henkey*, No. 25-cv-00682-AKB, 2025 WL 3754138 (D. Idaho Dec. 29, 2025); *Beltran Orellana v. Henkey*, No. 26-cv-00013-AKB, 2026 WL 194734 (D. Idaho Jan. 26, 2026). To the extent the Government's arguments are identical to those this Court rejected in prior cases, the Court incorporates by reference and adopts its analysis and rulings in *Guadarrama Ayala* and addresses only those arguments specific to this case.

This Court's previous cases definitively answer the legal question—§ 1226(a) applies because Petitioner was already present in the country and he is not subject to §§ 1225(b)(1), 1226(c), or 1231. *Jennings v. Rodriguez*, 583 U.S. 281, 288–89, 298 (2018). "The question of remedy, however, is slightly more complex here." *Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 295743, at *2 (D. Idaho Feb. 4, 2026). Petitioner asks the Court to order his immediate release or, alternatively, order the Government to provide him with a bond hearing within twenty days (Dkt. 1 at 15-16). The Government argues that outright release is inappropriate because

§ 1226(a) already provides an administrative framework available to Petitioner (*id*. at 5-6), his parole has not been revoked permanently (*id*. at 6), and his due process rights have been protected under *Mathews v. Eldridge*, 424 U.S. 319 (1976).

It also argues that Petitioner is a danger to the community given his history; it argues "Petitioner was incarcerated only after repeated violations of Idaho laws, and again after he violated the law following his enrollment in the ATD ISAP" (Dkt. 6 at 7). The criminal history identified includes primarily traffic offenses but also driving without privileges; at least two instances of failing to appear; and generally poor performance following court orders (*id*. at 5, 6). The Government also argues he is a flight risk because the "risk of a detainee absconding . . . escalates as the time for removal becomes more imminent" (*id.* at 7). Thus, the Government maintains that if the Court determines § 1226(a) applies, ICE should be ordered to follow the process outlined in § 1226(a) to assess whether Petitioner is a danger to the community and risk of flight (*id.*).

In other immigration habeas petitions, the Court ordered those petitioners that it determined to fall under § 1226(a) to be released from custody. *See Guadarrama Ayala*, 2025 WL 3754138, at *6; *Beltran Orellana*, 2026 WL 194734, at *3. In *Guadarrama Ayala*, this Court explained that outright release, as opposed to requiring the Government to provide the petitioner an individualized bond hearing as outlined in § 1226, was necessary because the civil detention violated the petitioner's procedural due process rights under the three-part test set forth in *Mathews*, 424 U.S. 319, and the Government identified no information establishing petitioner posed a danger or flight risk. *Guadarrama Ayala*, 2025 WL 3754138, at *4–5.

Here, however, Petitioner has a prior conviction. Although Petitioner argues this conviction is not indicative of his danger to the community and flight risk (Dkt. 9 at 4-5), that determination

**ORDER GRANTING PETITION – 3**

is not for this Court to make. Unlike in *Guadarrama Ayala*, the Government here asserts a legitimate argument that Petitioner's detention is necessary to protect the community given the repeat legal violations, failures to appear, and the recency of his misdemeanor offense (Dkt. 9 at 4-5). A district court has equitable discretion, "as law and justice require," for remedying unlawful detention in a habeas petition pursuant to § 2241. *See Brown v. Davenport*, 596 U.S. 118, 128 (2022). Despite this discretion, however, relief "should be no more burdensome to the [respondent] than necessary to provide complete relief to the [petitioner] before the court." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Thus, relief "must be narrowly tailored to remedy the specific harm shown." *Id.*

For individuals detained under § 1226(a), the Attorney General can either "continue to detain the arrested alien" or "may release the alien on (A) bond of at least $1,500" or "(B) conditional parole." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting § 1226(a)(1)–(2)). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. 8 C.F.R. § 236.1(c)(8). The alien will be released if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* If the alien is denied bond, he can seek an individualized bond hearing before an immigration judge at any time before a final order of removal. *Id.* § 236.1(d)(1). If, at this hearing, the detainee demonstrates by a preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his release. *Rodriguez Diaz*, 53 F.4th at 1197.

ORDER GRANTING PETITION – 4

The Honorable B. Lynn Winmill faced a similar situation recently in *Garcia Ortiz*, 2026 WL 295743. There, Judge Winmill held that § 1226(a) applied and thus petitioner's mandatory detention under § 1225 was unlawful. *Id.* at *2. He found, however, that because petitioner was recently convicted of DUI and had less strong ties to the United States than other petitioners, "the Court [could not] say with certainty that release [was] the appropriate remedy." *Id.* Therefore, Judge Winmill ordered the Government to either release petitioner or provide him with a bond hearing within seven days. *Id.* Following entry of that order, petitioner was given a timely bond hearing; however, the immigration judge denied bond on the basis that petitioner was a flight risk and danger to the community without creating a record of the proceeding. *Garcia Ortiz v. Henkey*, 1:26-cv-00043-BLW, 2026 WL 948275 at *1 (D. Idaho Apr. 7, 2026). Petitioner moved for an order enforcing the Court's order, arguing that because he did not receive a full and fair individualized bond hearing, the Court should enforce its previous order by requiring his immediate release from custody. *Id.* Judge Winmill agreed that the bond hearing was "fundamentally unfair" and ordered his release. *Id.* at *3.

As a noncitizen detained under § 1226(a), Petitioner here has a statutory right to a bond hearing. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1236(d)(1)). Because the Government has made a showing of danger to the community and risk of flight, "the Court cannot say with certainty that release is the appropriate remedy." *See Garcia Ortiz*, 2026 WL 295743, at *2. Therefore, the Court grants Petitioner's petition for writ of habeas corpus in part and orders the Government to provide him with an individualized bond hearing before an immigration judge within seven days of this order.

ORDER GRANTING PETITION – 5

The Court cautions the Government to provide Petitioner with an individualized bond hearing that comports with the basic requirements of due process. "In a constitutionally valid bond hearing, an alien '(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests.'" *Garcia Ortiz*, 2026 WL 948275, at *3 (quoting *Kamara v. Att'y Gen. of the U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)). The immigration judge should consider only evidence in the record and create a "Record of Proceeding." 8 C.F.R. § 1003.36. If Petitioner is denied bond without a constitutionally adequate hearing, the Court may consider additional release, including release from custody. *See Garcia Ortiz*, 2026 WL 948275, at *4 (ordering petitioner's release because "'rubber-stamp' denial is a violation of due process and of this Court's previous Order").

The Court advises that the failure to provide Petitioner with an individualized bond hearing that comports with the basic requirements of due process may result in Petitioner's release.

### III.    ORDER

**IT IS ORDERED that:**

1.      Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART**. The Government must either release Petitioner or provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226 which comports with basic due process requirements within **seven (7) days** of the date of this Order.

2.      The Government shall file a status report within **ten (10) days** of the date of this Order confirming compliance with this Order. The status report shall detail if and when the ordered bond hearing occurred, if bond was granted or denied, and if denied, the reason for that denial.

3.      Petitioner's Motion for Temporary Restraining Order (Dkt. 2) is **DENIED AS MOOT**.

DATED: May 29, 2026

Amanda K. Brailsford
U.S. District Court Judge

ORDER GRANTING PETITION – 7