UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUAN ARTURO CUSTODIO IXCOY,<br><br>      Petitioner,<br><br>v.<br><br>RUBEN LEYVA, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Acting Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, acting U.S. Attorney General; Mike HOLLINSHEAD, Sheriff of Elmore County,<br><br>      Respondents. | Case No. 1:26-cv-00298-AKB<br><br>**ORDER DENYING PETITIONER'S MOTION TO ENFORCE COURT ORDER** |

Pending before the Court is Petitioner Juan Arturo Custodio Ixcoy's Motion to Enforce Court Order (Dkt. 16) and Motion to Seal Exhibits A-G to Petitioner's Motion to Enforce Order (Dkt. 22; Dkts. 17-21, 24). The Court has reviewed the motion to seal and finds good cause exists to seal Exhibits A-G and the transcript of the bond proceedings (Dkts. 17-21; Dkt. 24). Accordingly, Petitioner's motion to seal (Dkt. 22) is granted. Petitioner also asks the Court to enforce its prior Order and grant his immediate release (Dkt. 16). For the reasons explained below, the Court denies the motion to enforce.

## I.    BACKGROUND

On May 13, 2026, Petitioner filed a petition for writ of habeas corpus, arguing that his detention is unlawful because the Department of Homeland Security (DHS) and the Executive

ORDER – 1

Office of Immigration Review (EOIR) have determined he is subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A) (Dkt. 1 ¶¶ 38-48). On May 29, 2026, the Court granted his petition in part, finding that Petitioner's detention was governed by § 1226(a); however, because the Government made a showing of danger to the community and risk of flight, the Court determined that release was not the appropriate remedy (Dkt. 12 at 5). Accordingly, the Court ordered the Government to provide Petitioner with an individualized bond hearing before an immigration judge (IJ) within seven days of the Order (*id.* at 6). The Court advised that the failure to provide Petitioner with an individualized bond hearing that comports with the basic requirements of due process could result in Petitioner's release (*id.*).

On June 4, 2026, Petitioner was given a bond hearing before an IJ, and Petitioner had the burden of proving that he was not a danger to the community or a flight risk (*id.* at 4). Because the IJ ultimately based his decision on risk of flight, the Court focuses on that aspect of the proceedings.

Petitioner was represented at the hearing, submitted a brief and evidence in support, and argued primarily that his extensive family ties, "stable work, pathway to legalization through his fiancée, and near-decade of presence in the United States rendered him a low flight-risk" (Dkt. 16 at 3). The IJ admitted he was unable to review all materials in advance of the hearing and took a recess to do so (Dkt. 24 at 4-8). Petitioner then testified with an interpreter present, was cross-examined, offered the opportunity for rebuttal, and gave closing argument (Dkt. 24 at 7-9; 10-25; 26-28). The Government argued a conviction for inattentive driving rendered him a danger to the community and that several failures to appear in misdemeanor cases rendered him a flight risk (*id.*). Petitioner argued he was not a flight risk because he had "never missed an ICE check-in," has a steady job, and a pending asylum claim, and because the bond amount could mitigate any

**ORDER – 2**

risk of flight (*id*. at 27). After the "lengthy bond hearing," the IJ took a moment to review notes, had no questions, and found Petitioner was not a danger to the community (*id*. at 30-31). The IJ considered Petitioner's family ties, age at arrival, youth, cooperation, completion of high school in the United States, and letters of support attesting to Petitioner's positive moral character and role as a loving son, brother, and partner. The IJ nonetheless found Petitioner was a flight risk because "not only do we have a failure to appear, but we've got a failure to appear of multiple instances, one of them that [Petitioner] pled guilty to and actually resulted in a misdemeanor finding in a criminal court" (Dkt. 24 at 33). The IJ explained there was an "overwhelming dynamic in this particular situation" and based on that, found Petitioner did not meet his burden of proof to show he is not a flight risk (Dkt. 24 at 34). Consequently, the IJ denied bond (*id*.).

On June 5, 2026, the Government filed a status report informing the Court of the IJ's decision (Dkt. 14). On June 10, 2026, Petitioner notified the Court of his intention to file the instant motion, and now agues the he was "given a sham hearing with a predetermined outcome" (Dkt. 15; Dkt 16 at 6; Dkt. 26 at 6). The Court ordered a briefing schedule (Dkt. 23); the Government filed an opposition to the motion (Dkt. 25); and Petitioner filed a reply (Dkt. 26). The motion is now ripe for review.

## II.    ANALYSIS

In his motion, Petitioner avers that the IJ's decision "in this instance is so out-of-step with the weight of the evidence as to, once more, suggest that they have reached a pre-determined outcome" (Dkt. 16 at 6). According to Petitioner, the appropriate remedy is immediate release (*id.* at 9). The Government disagrees, maintaining Petitioner's due process rights were met during a legitimate bond hearing and there is nothing left to enforce (Dkt. 25 at 5).

**ORDER – 3**

### A.   Jurisdiction

"When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional or other federal rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008) (citation modified). Although "courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody," in modern practice "courts employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action." *Id.* at 741. In those instances, "the district court ha[s] authority to review compliance with [the] earlier order conditionally granting habeas relief." *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011); *see also* Fed. R. Civ. P. 70(a) ("If a judgment requires a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done."). And "if a state 'fails to cure the constitutional error, i.e., when it fails to comply with the order's conditions . . . the conditional grant of habeas corpus requires the petitioner's release from custody.'" *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020) (quoting *Harvest*, 531 F.3d at 750).

Here, the Court ordered that the Government either: (1) conduct an individualized bond hearing pursuant to § 1226 which comports with basic due process requirements within seven days, or (2) release Petitioner (Dkt. 10 at 6). The Court therefore has jurisdiction to review whether the IJ applied the required standard.

### B.   Enforcement of Order Conditionally Granting the Petition

The Court now considers the limited question of whether the Government complied with the Court's order requiring the Government to provide Petitioner with an individualized bond hearing pursuant to § 1226(a) that comports with the basic requirements of due process.

ORDER – 4

Petitioner argues that the IJ's proffered rationale for denying bond does not comport with due process (Dkt. 16 at 5).[1] At the hearing, the IJ found that Petitioner was not a danger to the community but, based on the evidence received, was a flight risk (Dkt. 24 at 35). Specifically, the IJ held Petitioner failed to meet his burden of demonstrating that he is not a flight risk because "not only do we have a failure to appear, but we've got a failure to appear of multiple instances, one of them that [Petitioner] pled guilty to and actually resulted in a misdemeanor finding in a criminal court" (Dkt. 24 at 33-34). The IJ further found that Petitioner's family ties, youth, cooperation, and high school graduation did not demonstrate he was not a flight risk (*id.* at 31). According to Petitioner, these statements do not provide a sufficient reason for the IJ's decision (Dkt. 16 at 5-6). The Government contends that Petitioner's instant motion is essentially an improper appeal of a discretionary IJ decision (Dkt. 18 at 4). The Court finds that the bond hearing comported with the requirements of due process.

"In a constitutionally valid bond hearing, an alien '(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests.'" *Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (quoting *Kamara v. Att'y Gen. of the U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)). Where a non-citizen is detained pursuant to § 1226(a), the Ninth Circuit has held that an IJ should consider the factors set forth at *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), in

---

[1]    The Court notes Petitioner also appears to argue that denying bond in any amount when the IJ's decision is based on a risk of flight is improper (Dkt. 16 at 4). Petitioner's citation does not support that position, and to the contrary, the Court finds that reviewing the amount of bond set is not within its purview. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1067 (9th Cir. 2008).

ORDER – 5

determining whether release is appropriate. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008).

Those factors include: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Of those factors, "the alien's criminal record—including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses"—is "most pertinent to assessing dangerousness" *Id.* (quoting *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011)). The IJ should consider only evidence in the record and create a "Record of Proceeding." 8 C.F.R. § 1003.36.

Petitioner's argument regarding the *Guerra* factors is confusing. It states "[h]ere, the IJ found that Petitioner was not a danger, and although by his findings on the record, factors 1, 2, 3, and 4 weighed in his favor, and that he complied with ICE check-ins" (Dkt. 16 at 5). Regardless, the Court reviewed the transcript and finds the *Guerra* factors were developed on the record; the IJ considered where Petitioner would reside if released (Dkt. 24 at 11-12); how long he had resided in the United States (*id.* at 10); his family (and fiancée) residing in the United States and whether they were residents or citizens of the United States (*id.* at 12); his employment history (*id.* at 10); his criminal history (*id.* at 28); and how he entered the United States (*id.* at 26). Petitioner's counsel also presented the IJ with letters from Petitioner's family and his employer (Dkt. 24 at 32). The mere fact that the IJ did not recite all the evidence considered in rendering a decision does not

ORDER – 6

make that determination void. *See, e.g.*, *Nucamendiz v. Hyde*, No. 25-cv-13851, 2026 WL 221449, at *2 (D. Mass. Jan. 28, 2026) (finding the IJ's determination petitioners were a flight risk did not violate due process because "Respondents and Petitioners were each permitted to present evidence of risk of flight at their respective hearings, and the reasons given by the immigration judge were, in each case, specific to the petitioner's circumstances and plausibly related to the risk that the petitioner would abscond"). Nothing in the IJ's decision indicates the IJ failed to consider or improperly considered the evidence Petitioner presented.

Accordingly, Petitioner's disagreement with the IJ's decision misses the point. The IJ enjoys wide discretion in determining whether an alien is a flight risk. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). The *Guerra* considerations identified above plausibly relate to Petitioner's likelihood of fleeing, and it is well settled that the IJ may give greater weight to certain factors over others in coming to a reasonable decision. *See In re R-A-V-P*, 27 I. & N. Dec. 803, 804–05 (BIA 2020), *abrogated on other grounds by Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021).

This case is also distinguishable from *Garcia Ortiz*, 2026 WL 948275. There, the Court granted petitioner's motion to enforce after the IJ conducted a bond hearing because the IJ denied bond on the basis that petitioner was a flight risk and danger to the community without creating a record of the proceeding. *Id.* at *1. The Court also found that the IJ improperly relied on a police report that was not in the record to conclude that petitioner was a danger to the community simply because the IJ "decided to assume that the contents of the police report would have indicated [p]etitioner's dangerousness." *Id.* at *3. In ordering petitioner's release, the Court explained that it did not weigh evidence or assess credibility; rather, immediate release was warranted because

**ORDER – 7**

the conduct of the proceedings showed that the IJ did not truly consider the evidence before him. *Id.* at *4.

Here, the IJ did create a record of Petitioner's bond hearing, and that record provides a rational basis for the IJ to find that Petitioner did not meet his burden of showing that he was not a danger or flight risk (Dkt. 16). That this Court might have drawn a different conclusion from the evidence were its review de novo is not the appropriate standard, given the very circumscribed nature of collateral review of agency bond determinations by federal district courts.

As a noncitizen detained under § 1226(a), Petitioner has a statutory right to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Petitioner was afforded that bond hearing. The Court finds that the IJ made an individualized determination of Petitioner's flight risk and danger (indeed, finding that Petitioner is not a danger), and it is not this Court's role to agree or disagree with the finding. Any further challenge to this decision must be presented to the Board of Immigration Appeals (BIA). Accordingly, Petitioner's motion to enforce is denied.

### III.   ORDER

**IT IS ORDERED that:**

1.   Petitioner's Motion to Enforce Court Order (Dkt. 16) is **DENIED**.

2.   Petitioner's Motion to Seal Exhibits to Petitioner's Motion to Enforce (Dkt. 15) is **GRANTED**. The following documents shall be sealed:

   a.   Audio Transcription (Dkt. 24);

ORDER – 8

b. Exhibits A-G filed in Support of Petitioner's Motion (Dkts. 16, 17, 18, 19, 20, and 21).

DATED: July 07, 2026

Amanda K. Brailsford
U.S. District Court Judge

ORDER – 9